UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-11160
_____


SUSIE BANKS, etc; et al.,

Plaintiffs,


ARLEE BOOTH; BETTY MORGAN; LATAVIAN BOOTH;
KIMELA BOOTH; VONTREAL BOOTH; FREDDIE MORGAN;
LESLIE RUSSELL; SANDRA HALL;

Plaintiffs-Appellants,


versus


DALLAS HOUSING AUTHORITY; et al.,

Defendants,


CHALLENGE PROPERTIES; ALFRED D. HUGHES CORP.;
ALFRED D. HUGHES,

Defendants-Appellees.


_____


Appeal from the United States District Court
for the Northern District of Texas, Dallas

_____


October 24, 2001
Before JONES, SMITH, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

At issue in this case is whether a class of black tenants
of a Dallas, Texas housing project may sue its HUD-subsidized
private owners for violations of Section 8 of the Housing Act of
1937, 42 U.S.C. § 1437f(e) (since repealed).  We agree with the

magistrate judge's conclusion that there is no implied private right of action under § 1437f(e) and that violations of § 1437f(e) are not actionable under 42 U.S.C. § 1983. The judgment denying relief against the apartment owners on this basis is affirmed.

## I.  FACTS AND PROCEDURAL HISTORY

The plaintiffs brought this class action on behalf of "all African-Americans who, within the two year period prior to October 28, 1988, occupied a unit at Robin Square Apartments for which Dallas Housing Authority provided Section 8 [42 U.S.C. § 1437f] Moderate Rehabilitation assistance." During this two year period, the Robin Square Apartments were owned and operated by Challenge Properties, the Alfred D. Hughes Corporation, and Alfred D. Hughes (collectively, the "Robin Square defendants").

The Section 8 Moderate Rehabilitation Program authorized the Secretary of the Department of Housing and Urban Development ("HUD") to

> make assistance payments under this section directly or through public housing agencies pursuant to contract with owners or prospective owners who agree to upgrade housing so as to make and keep such housing *decent, safe, and sanitary* through upgrading which involves less than substantial rehabilitation. . . .

42 U.S.C. § 1437f(e)(West 1990)(emphasis added).[1] In this case, HUD channeled the assistance payments through DHA, which agreed to

---

[1]    The Section 8 program was repealed by Pub. L. 101-625, Title II, § 289(b), 104 Stat. 4079 (November 28, 1990).

provide tenants and pay rent assistance for each rehabilitated unit in the Robin Square Apartments.

The Robin Square defendants were required to maintain the apartments in "decent, safe, and sanitary" condition in order to receive government subsidies under Section 8. This statutory requirement was reiterated in the contractual agreements between the parties. For example, the standard "Annual Contributions Contract" between HUD and DHA provided that DHA "shall require, as a condition for the making of housing assistance payments, that the owner maintain the assisted dwelling units and related facilities in decent, safe, and sanitary condition." The record suggests that HUD and DHA considered a rental unit "decent, safe, and sanitary" if it substantially complied with a myriad of HUD standards, such as those requiring that subsidized units have adequate heating and cooling, that the units be free of vermin and rodents, and that the project site be accessible to recreational, educational, commercial, and health facilities and services. 24 C.F.R. § 882.109; 24 C.F.R. § 882.404(b).

In a series of reports issued in 1987 and 1988, both HUD and DHA concluded that the Robin Square defendants had failed to meet HUD's housing quality standards. In October 1988, HUD and DHA terminated the Section 8 rent assistance contract with the Robin Square defendants and transferred the tenants to other housing projects.

3

In July 1987, several Robin Square tenants filed this suit, alleging that DHA and the Robin Square defendants had violated various civil rights laws as well as Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f(e). After an initial flurry of activity, the suit languished until June 1998, when the district court granted the plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23(b)(3).

In June 1998, the district court entered partial summary judgment against DHA in light of its admission that it had approved the Robin Square project for the purpose of housing black tenants in segregated neighborhoods. The court also determined that DHA had breached its obligation to ensure that the Robin Square apartments met HUD's housing standards.

In October 1999, the parties agreed to let a magistrate judge conduct all further proceedings. In May 2000, the claims of seven class members were tried before a jury. The jury assessed modest damages against DHA to compensate the plaintiffs for the diminished rental value of their units. DHA has not appealed the court's finding of liability or the jury's award of damages.

With respect to the Robin Square defendants, the jury rejected the plaintiffs' claims under the Fourteenth Amendment; the Fair Housing Act, 42 U.S.C. § 3604; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and 42 U.S.C. § 1982. The jury found that the Robin Square defendants had neither acted with a

4

racially discriminatory purpose to segregate blacks in public housing nor operated the apartments with the purpose of discriminating against the plaintiffs because of their race. The plaintiffs do not appeal this portion of the judgment.

The jury also concluded, however, that the Robin Square defendants had purposefully and consistently operated the apartments in violation of § 1437f(e). Despite this finding of liability, the jury awarded the trial plaintiffs no damages arising from the Housing Act violations.

After the jury returned its verdict, the magistrate judge granted the Robin Square defendants' renewed motion for judgment as a matter of law. The magistrate judge concluded, first, that violations of 42 U.S.C. § 1437f(e) are not actionable under 42 U.S.C. § 1983; and, second, that there is no implied private right of action under § 1437f(e). The magistrate judge entered a final judgment for the Robin Square defendants and ruled that this judgment was binding as to all class members.

## II. DISCUSSION

The sole issue on appeal is whether the plaintiffs have a cause of action for the Robin Square defendants' violations of former § 1437f(e), which provided that public housing authorities could make assistance payments to only those property owners "who agree[d] to upgrade housing so as to make and keep such housing decent, safe, and sanitary." Two avenues exist for finding a cause

5

of action.  The statute may create rights enforceable by individuals against state actors pursuant to 42 U.S.C. § 1983. Alternatively, the statute may give rise to an implied private cause of action.

## A.  Section 1983

A procedural question first arises as to whether the plaintiffs have abandoned their Housing Act claim under § 1983 because they did not properly submit that theory of recovery to the jury.  We conclude they did not abandon this claim.

Before trial, the plaintiffs asserted that violations of § 1437f(e) were actionable under both § 1983 and under an implied right of action.  To prevail on this § 1983 claim, the plaintiffs were required to prove that the Robin Square defendants had, while acting under color of state law, deprived them of a right secured by 42 U.S.C. § 1437f(e).  See, e.g., Bass v. Parkwood Hospital, 180 F.3d 234, 241 (5th Cir. 1999).  The crux of the Robin Square defendants' argument appears to be that the jury instructions on the Housing Act claim did not contain any reference to § 1983 or any instruction regarding the element of state action.  By contrast, the instructions on the plaintiffs' Fourteenth Amendment claims under § 1983 explicitly referred to the cause of action and did contain a brief explanation of state action.

We would note, however, that the specific Fourteenth Amendment questions submitted to the jury pertained only to whether

6

the Robin Square defendants had acted with a racially discriminatory purpose. Thus, even on the Fourteenth Amendment claim, the jury was not asked to decide any factual issues relevant to the state action question. This omission is not surprising because nearly all the relevant facts -- such as DHA's financial support and oversight of the apartments -- are undisputed. Once the facts were established, the magistrate judge was in a position to resolve the legal issue whether the Robin Square defendants, who are private entities, may nevertheless be treated as state actors for purposes of each § 1983 claim. The record does not show that either party insisted on a ruling on this issue prior to trial. And, after the jury found that the Robin Square defendants had not acted with a discriminatory motive, and after the magistrate judge ruled that the Housing Act did not confer a right enforceable under § 1983, the magistrate judge had no reason to decide the state action question. Under these circumstances, we cannot say that the plaintiffs abandoned their Housing Act claims under § 1983 in favor of their alternative theory that § 1437f(e) implicitly created a private right of action.

Turning to the merits, the plaintiffs contend that the Robin Square defendants may be sued under 42 U.S.C. § 1983 for operating a housing project, which was funded and regulated by government entities, "in a manner that violated plaintiffs' United States Housing Act right to decent, safe, and sanitary housing."

7

The plaintiffs' argument raises two questions: whether § 1437f(e) creates an enforceable federal right to decent housing; and, if so, whether the Robin Square defendants acted "under color of state law" in the course of violating the plaintiffs' rights.

Section 1983 creates a cause of action against a state actor who deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Although most § 1983 claims involve constitutional violations, the provision also applies to rights created by federal statutes. See Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). However, as the Supreme Court has emphasized, "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." Blessing v. Freestone, 520 U.S. 329, 340-41, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997).

To determine whether a particular statutory provision creates a federal right enforceable through § 1983, the Supreme Court has articulated the following factors:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States [or other state actor].

8

Blessing, 520 U.S. at 340-41, 117 S.Ct. at 1359 (citations omitted).[2] In Blessing, the Court unanimously held that recipients of child support services under Title IV-D of the Social Security Act could not sue state officials under § 1983 for the state's failure to provide adequate services. Id., 520 U.S. at 339-40, 117 S.Ct. at 1359. The Court explained that a statute requiring the states to operate child support programs "in substantial compliance" with Title IV-D of the Social Security Act did not create an individual entitlement to government services. Id., 520 U.S. at 343-44, 117 S.Ct. at 1361. The "substantial compliance" provision was not primarily intended to benefit families eligible for Title IV-D assistance; instead, the statute was meant to create a "yardstick" for the Department of Health and Human Services to measure a state's performance under Title IV-D. Id.

Similarly, to the extent § 1437f(e) confers a benefit upon residents of public housing, the provision operates in an indirect and attenuated manner. The purpose of § 1437f(e) was to impose a condition upon the receipt of government monies. That is to say, public housing authorities could make assistance payments only to those property owners who kept their housing units "decent,

---

[2] Blessing also held that even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Id. We do not reach that limitation on Blessing's three-factor test.

safe, and sanitary."  This statutory provision -- especially when read in conjunction with the corresponding HUD regulations and the contractual agreements between the parties -- does nothing more than explain what property owners must do in order to receive public subsidies.  The Supreme Court observed recently that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intention to confer rights on a particular class of persons'."  Alexander v. Sandoval, 532 U.S. ____, ____, 121 S.Ct. 1511, 1520, 149 L.Ed.2d 517 (2001) (quoting California v. Sierra Club, 451 U.S. 287, 294, 101 S.Ct. 1775 (1981)).  Thus, with respect to the first factor listed in Blessing, Congress enacted § 1437f(e) for the purpose of placing conditions upon the property owners' receipt of assistance payments, not in order to confer a benefit upon tenants of public housing.[3]

---

[3]    Our analysis of this first factor follows Edwards v. District of Columbia, 821 F.2d 651 (D.C. Cir. 1987), which involved 42 U.S.C. §§ 1437p and 1437d(*l*).  Section 1437p provides that HUD may not approve a public housing authority's request to demolish a housing project unless the housing authority satisfies certain conditions, such as consultation with tenants prior to submitting the application.  Edwards held that § 1437p does not create an enforceable right against constructive demolition where the public housing authority has arguably failed to fulfill these conditions. Edwards, 821 F.2d at 659-60.  Section 1437d(*l*) provides that public housing authorities "shall utilize leases which . . . obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition."  The D.C. Circuit held that this statutory provision did not create a federal right to properly maintained housing.  That provision created, at most, only the right to a lease, the terms of which would be enforceable under general

The second factor is whether the plaintiffs' asserted right to "decent, safe, and sanitary" public housing is too vague to be judicially enforceable. The plaintiffs rely heavily on Wright v. City of Roanoke Redevelopment & Housing Auth., 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), which held that a different provision of the Housing Act, 42 U.S.C. § 1437a, created a federal right enforceable under § 1983. Section 1437a provided that "tenants could be charged as rent no more and no less than 30 percent of their income." Wright, 479 U.S. at 430, 107 S.Ct. at 773-74. The Court pointed out that this mandatory provision "could not be clearer" and that it was "focus[ed] on the individual family and its income." Id. The specificity of § 1437a, coupled with its focus on the tenants, suggested that Congress intended to create a right enforceable under § 1983. In this case, on the other hand, the imprecision of the alleged statutory right to "decent, safe, and sanitary" housing suggests that Congress did not intend to create a judicially enforceable right.[4]

---

principles of contract and property law. Id. at 653 n.2. In each instance, the statutory provision focused on procedures that public housing authorities were required to follow, and the public housing tenants would receive any benefit only indirectly. Here, as in Edwards, no violations of state contract or property law were asserted.

[4] We recognize, of course, that the HUD housing quality standards are much more specific than the language of § 1437f(e). But § 1983 safeguards only those rights secured by the "Constitution and laws," so the existence of specific HUD regulations should not be relevant to the overriding question

11

The third factor is whether the statute unambiguously imposes a binding obligation on the state actor. To be sure, the language in § 1437f(e) is not merely precatory. But, as noted above, the owner's statutory obligation to maintain decent housing runs to the public housing authorities, not to the residents of the housing project. In other words, the obligation is binding only in the sense that proper maintenance of the rental units is a condition that Congress placed upon the receipt of Section 8 rent assistance.

On the basis of the factors articulated in <u>Blessing</u>, the statutory language of former § 1437f(e) did not create a federal right enforceable under § 1983.[5]

## B.  Implied Private Right of Action

The plaintiffs also contended at trial that a private right of action to enforce § 1437f(e) may be inferred from the statute itself. This argument is foreclosed by the Supreme Court's recent decision in <u>Alexander v. Sandoval</u>, <u>supra</u>, as well as by our

---

whether Congress intended to create a federal right enforceable through § 1983.

[5]  Because we decide that violations of § 1437f(e) are not actionable under § 1983, we need not determine whether the Robin Square defendants were acting under color of state law. <u>Cf. Brentwood Academy v. Tennessee Secondary School Athletic Ass'n</u>, 531 U.S. ___, ___ 121 S.Ct. 924, 930, 148 L.Ed.2d 807 (2001); <u>Bass v. Parkwood Hospital</u>, 180 F.3d 234, 241-42 (5th Cir. 1999).

12

conclusion that § 1437f(e) does not create an individual right to "decent, safe, and sanitary" public housing.

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id., 532 U.S. at ___, 121 S.Ct. at 1519-20. As was true in Alexander, the statutory provision in this case focuses on the recipients of federal funding and on the regulating agencies -- not on the class represented by the plaintiffs. As a general rule, Congress does not intend to create a private right of action where a statute is "'phrased as a directive to federal agencies engaged in the distribution of federal funds.'" Id., 532 U.S. at ___, 121 S.Ct. at 1521 (quoting Universities Research Ass'n v. Coutu, 450 U.S. 754, 772, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981)). We find no evidence in the text or structure of the statute that would suggest any intent on the part of Congress to create either a substantive federal right or a private right of action to enforce that right.

## III. CONCLUSION

The magistrate judge did not err in deciding that the Robin Square defendants are entitled to judgment as a matter of law or in applying his decision to all class members. The now-repealed provision of 42 U.S.C. § 1437f(e) requiring that public housing authorities make assistance payments only to those property owners

13

who keep public housing "decent, safe, and sanitary" neither displays Congressional intent to create a private right of action nor creates a federal right that is judicially enforceable through 42 U.S.C. § 1983.  The judgment is therefore AFFIRMED.