**NEIGHBORHOOD RESEARCH INSTITUTE, et al., Plaintiffs,**

v.

**CAMPUS PARTNERS FOR COMMUNITY URBAN DEVELOPMENT, et al., Defendants.**

**No. 92–CV–460.**

United States District Court, S.D. Ohio, Eastern Division.

Nov. 26, 2002.

---

Rick Louis Brunner, The Brunner Law Firm Co. LPA, for Plaintiffs.

Roger Philip Sugarman, Loriann E. Fuhrer, Kegler, Brown, Hill & Ritter, Columbus, OH, for Campus Partners for Community Urban Redevelopment.

Keith Shumate, Squire, Sanders & Dempsey, Columbus, OH, for Ohio Capital Corp. for Housing.

Larry Holliday James, Crabbe, Brown & James, Columbus, OH for defendants.

Mark Thomas D'Alessandro, U.S. Attorney's Office, Columbus, OH, for Secretary of Housing and Urban Development, U.S. Dept. of Housing and Urban Development, Office of Multi Family Housing and Assistance Restructering.

Joshua T. Cox, Columbus City Attorney's Office, Special Litigation Unit, Columbus, OH, for City of Columbus.

Nick A. Soulas, Jr., Harland Hanna Hale, Franklin County Prosecutor's Office, Columbus, OH, for Mary Jo Kilroy, Arlene Shoemaker, and Dewey Stokes.

William Duncan Whitney, John Cornely, Delaware, OH, for Donald E. Wuertz, Deborah Martin and James D. Ward.

Mark David Landes, Isaac, Brant, Ledman & Teetor, Columbus, OH, for Lisa Nmi Kessler, Ellen Reid, and Judi Nmi Shupe.

Wilson G. Weisenfelder, Jr., Rendigs, Fry, Kiely & Dennis, LLP, Cincinnati, OH, for Mid-Ohio Regional Planning Commission.

### OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendants' motions to dismiss the Plaintiffs' Complaint. On July 8, 2002, Defendants Broad Street Management, Inc., Encore, Sandefur Builders, Inc. (General Partner of Encore), Buckeye 77, Medallion Buckeye, Inc., Medallion–Buckeye, Ltd., Citation, Medallion–Citation, Ltd., U.S. # 51, David W. Houze, Sandefur Builders, Inc. (General Partner of Citation), Discovery 76, Medallion–Discovery, Inc., Medallion–Discovery, Ltd., Momentum 75, Polaris, Medallion–Polaris, Inc., Medallion–Polaris, Ltd., Sandalwood, Rehab Unlimited, Rehab Unlimited 74, Medallion–Sandalwood, Ltd. (General Part-

ner of Sandalwood Limited Partnership), Medallion–RU 74, Inc., Odyssey, Medallion–Odyssey, Ltd., Metro I, Medallion–Metro, Inc., Horizon, and Sandefur Builders, Inc. (General Partner) (collectively, "Broad Street Defendants"), filed a Motion to Dismiss the Plaintiffs' Complaint. Then, on July 12, 2002, Defendant Secretary of Housing and Urban Development ("HUD") filed a Motion to Dismiss. Finally, on July 29, 2002, Defendants James D. Ward, Deborah Martin, and Donald E. Wuertz, the Delaware County Commissioners (collectively, "Delaware Defendants") filed a Motion to Dismiss the Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The Plaintiffs in this case are the Neighborhood Research Institute ("NRI"), which represents residents and an organization of residents of the neighborhood known as Olde Town East, located on the near east side of the City of Columbus, William Shaffer, a resident and homeowner in the near east side of Columbus, and David Fisher d/b/a F & W Properties, who owns properties in the near east side of Columbus.

Based on the following analysis, the Court **GRANTS** the Defendants' Motions to Dismiss.

## II. BACKGROUND

### A. Relevant Statutes and Regulations

The gravamen of the Plaintiffs' Complaint is that they were wrongfully deprived of the opportunity to participate in the Defendants' restructuring of certain section 8 housing[1] in the City of Columbus. Their claims relate to three federal programs and the associated statutes and regulations. In particular, at issue in this matter are: (1) mortgage insurance, provided pursuant to sections 221(d)(3) and 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(4) (2000); (2) low-income housing assistance, provided pursuant to section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (Supp. V 1999); and (3) section 8 contract renewals and mortgage

restructuring pursuant to the Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub.L. § 105–65, codified at 42 U.S.C. § 1437f Note ("MAHRA"), referred to by HUD as the "Mark–to–Market Program."

Sections 221(d)(3) and 221(d)(4) of the National Housing Act authorize programs under which HUD insures mortgages on multifamily rental housing projects. Pursuant to those provisions, HUD insures the private lender against default on the loan by the borrower. *See* 12 U.S.C. § 1715*l*. Each of the thirteen projects at issue in this case was developed through the use of § 221(d)(3) and § 221(d)(4) mortgage insurance.

Section 8 housing assistance is the primary means through which HUD "aid[s] low-income families in obtaining a decent place to live and ... promot[es] economically mixed housing." 42 U.S.C. § 1437f(a). Under the section 8 program, eligible families pay thirty percent of their adjusted income toward their rental payment, while HUD pays the balance of the rent to the project owner, usually through public housing agencies. 42 U.S.C. § 1437f(c)(3), 42 U.S.C. § 1437a(a)(1). All of the section 8 rental assistance provided in this case was project-based, which means that the rental assistance is attached to the housing units, and any eligible tenant residing in the units may receive the assistance.[2] *See* 42 U.S.C. § 1437f(d).

HUD's Mark–to–Market Program was created pursuant to the requirements of MAHRA. The purposes of MAHRA include the following:

(1) to preserve low-income rental housing affordability and availability while reducing the long-term costs of project-based assistance;

(2) to reform the design and operation of Federal rental housing assistance programs, administered by the Secretary, to promote greater multifamily housing project operating and cost efficiencies;

---

**1.** "Section 8 housing" refers to low-income housing that is governed by section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (Supp. V 1999), and which receives government assistance pursuant to that statute.

**2.** Alternatively, section 8 rental assistance may be tenant-based, provided to the tenant in the form of vouchers. *See* 42 U.S.C. § 1437f(*o*).

(3) to encourage owners of eligible multifamily housing projects to restructure their FHA-insured mortgages and project-based assistance contracts in a manner that is consistent with this subtitle before the year in which the contract expires;

(4) to reduce the cost of insurance claims under the National Housing Act ... related to mortgages insured by the Secretary and used to finance eligible multifamily housing projects;

(5) to streamline and improve federally insured and assisted multifamily housing project oversight and administration;

(6) to resolve the problems affecting financially and physically troubled federally insured and assisted multifamily housing projects through cooperation with residents, owners, State and local governments, and other interested entities and individuals;

(7) to protect the interest of project owners and managers, because they are partners of the Federal Government in meeting the affordable housing needs of the Nation through the section 8 rental housing assistance program;

(8) to protect the interest of tenants residing in the multifamily housing projects at the time of the restructuring for the housing; and

(9) to grant additional enforcement tools to use against those who violate agreements and program requirements, in order to ensure that the public interest is safeguarded and that Federal multifamily housing programs serve their intended purposes.

MAHRA § 511(b).

The Mark–to–Market program entails restructuring existing mortgage debt on multifamily housing projects with expiring project-based section 8 rental assistance contracts and the reduction of section 8 rents accordingly. MAHRA §§ 514, 515, 524. The program allows HUD to continue section 8 rental assistance at rental levels in line with comparable unassisted units by means of restructuring the mortgage debts owed on the projects and providing for needed rehabilitation.

MAHRA governs the renewal of all expiring section 8 Housing Assistance Payment (HAP) contracts. Project owners with expiring HAP contracts may voluntarily continue in the program, but may choose to end their participation. HUD, on the other hand, is required by MAHRA to renew all expiring HAP contracts, subject to appropriations, if the project owner so requests and the project qualifies. *See* MAHRA § 515(a) (stating that, if the project owner elects to participate in the Mark–to–Market program, the Secretary "shall" offer to renew the HAP contract, and "the owner of the project shall accept the offer").

Section 514(f) of MAHRA requires the Secretary of HUD to establish procedures to provide an opportunity for residents of affected neighborhoods to participate effectively and on a timely basis in any section 8 restructuring. That provision states, in relevant part:

The Secretary shall establish procedures to provide an opportunity for tenants of the project, residents of the neighborhood, the local government, and other affected parties to participate effectively and on a timely basis in the restructuring process established by this subtitle.

These procedures shall take into account the need to provide tenants of the project, residents of the neighborhood, the local government, and other affected parties timely notice of proposed restructuring actions and appropriate access to relevant information about restructuring activities. To the extent practicable and consistent with the need to accomplish project restructuring in an efficient manner, the procedures shall give all such parties an opportunity to provide comments to the participating administrative entity in writing, in meetings, or in another appropriate manner (which comments shall be taken into consideration by the participating administrative entity).

The procedures developed pursuant to paragraph (1) shall require consultation with tenants of the project, residents of the neighborhood, the local government, and

other affected parties, in connection with at least the following:

> (A) the mortgage restructuring and rental assistance sufficiency plan;
>
> (B) any proposed transfer of the project; and
>
> (C) the rental assistance assessment plan pursuant to [MAHRA section 515(c)].

MAHRA § 514(f)(1)-(2). Pursuant to that mandate, HUD developed regulations requiring the participating administrative entity ("PAE") to solicit comments on a restructuring plan from local community residents. 24 C.F.R. § 401.500(a).[3] The PAE must give the tenant and local community residents notice of its intent to restructure. That notice must state, *inter alia,* how comments may be provided to the PAE regarding any proposed sale or transfer of the property or any other matters regarding the property and its management. 24 C.F.R. § 401.500(b)(2).

### B.   Facts

Although somewhat difficult to decipher, the following facts have been adduced from the Plaintiffs' Complaint.

According to the Plaintiffs, Defendants Franklin County and the City of Columbus have adopted a plan for housing development, one of the goals of which is to disperse affordable rental housing, including public and assisted housing, throughout the City of Columbus and Franklin County. The alleged goal of the plan is to move certain low-income housing outside of existing areas of poverty concentration and place such housing closer to the city's employment growth center. This goal apparently relates to a September 2000 report of the Columbus Housing Task Force which found that there existed in Columbus a significant spatial mismatch between the locations of new jobs and the locations of rental housing affordable to low-income households.

Defendant Broad Street Management, Inc. ("Broad Street") manages section 8 low-income housing under contract with Defendant Limited Partnerships, and through contracts with Defendant Secretary of HUD. The Plaintiffs assert that a number of the properties managed by Broad Street and its related entities (the "Broad Street Defendants," as designated above) are located within an area of Columbus known as the University District, which encompasses an area in and around The Ohio State University. The contracts between the Broad Street Defendants and HUD will expire some time in the near future.[4] To continue the relationship that currently exists, the Broad Street Defen-

---

**3.** The regulation states, in pertinent part:

(a) General. The PAE must solicit, and document the consideration of, tenant and local community comments. As a minimum, the notices described in paragraphs (b), (c) and (f) of this section, in form and substance acceptable to HUD, must be provided. The PAE may require the owner to give the notices if permitted by HUD.

(b) Notice of intent to restructure and consultation meeting.

(1) This notice must include at a minimum:

(i) The project, including its name and FHA Project Number;

(ii) The responsible PAE and contact person . . .;

(iii) The owner's notice of intent to restructure through the Mark–to–Market Program; and

(iv) The date of expiration of the project-based assistance.

(2) This notice must state how comments may be provided to the PAE regarding any of the following: the physical condition of the property, whether the rental assistance should be tenant-based or project-based, any proposed sale or transfer of the property, and other matters regarding the property and its management. The notice must establish the date, time, and place for a public meeting to be held no sooner than 20 days and no later than 40 days following the date of this notice. The public may provide written comments up to the date of the meeting.

. . .

(d) Meeting to discuss the Restructuring Plan. After the PAE has given notice under this section and at least 10 days before the PAE submits the Plan to HUD, the PAE must conduct a public meeting to obtain comments on the substantively completed Plan. The PAE must accept written comments through the date of the meeting.

(e) Disposition of comments. The PAE must document and provide to HUD with the Restructuring Plan a summary of the disposition of all public comments.

**4.** No party has indicated precisely when those contracts will expire.

dants have drafted a plan to renew their contracts with HUD, and to restructure the properties they operate under section 8.

Defendant Campus Partners is currently engaging in a project to revitalize the University District by improving the housing and commercial properties located in that area of Columbus. According to the Plaintiffs, Campus Partners is demolishing a number of buildings and other structures within the University District to achieve the goals of its project. The Plaintiffs allege that, as part of its project, Campus Partners intends to demolish low-income housing that currently exists within the University District, and disperse such low-income housing into other areas of Columbus, including the near east side of Columbus, an area referred to as "Olde Town East."

On June 30, 2001, Campus Partners submitted a document to HUD entitled, "Broad Street Portfolio Restructuring Plan: A Strategic Approach to Preserving and Revitalizing Columbus Urban Neighborhoods."[5] On page 9 of the document, Campus Partners recognizes the stated public policy of the City of Columbus that concentration of poverty in excess of thirty percent within any neighborhood is unsustainable. Page 14 of the document indicates that Defendants Campus Partners and Broad Street intend to implement the staged deconcentration of 1385 units of section 8 housing over a period of three to five years. The Plaintiffs claim, "on information and belief," that the deconcentration of section 8 housing units will be focused, at least in the initial stages, in the University District. According to the proposed plan, the deconcentration of section 8 housing will involve the transfer of physical assets of Defendant Broad Street and/or Defendant Limited Partnerships to Defendant Campus Partners and/or Columbus Neighborhoods LP, and/or the entities controlled by them.

On November 1, 2001, counsel for Plaintiff NRI wrote a letter to Mr. Leonard Clark at HUD's Office of Multifamily Housing Assistance Restructuring ("OMHAR"), objecting to Broad Street's proposal for plans to restructure section 8 housing developments. The letter served as NRI's formal objection to Broad Street's proposal for a restructuring plan that would keep Broad Street as the managing entity over the following section 8 housing developments, as those developments were referred to in NRI's letter: Buckeye 77; Calumet/Horizon/Sinclar; Citation; Discovery 76; Encore; Metro I; Momentum 75; Odyssey; Polaris; Rehab Unlimited; Rehab Unlimited 74; US # 51; and Sandalwood. Through the letter, NRI requested that the restructuring plan proposed by Broad Street be stayed until the members of NRI had an opportunity to be heard through a formal objection process.

In response, NRI's counsel received a letter from HUD's OMHAR office, dated November 26, 2001. The letter reads, in part, as follows:

> We appreciate receiving your letter of November 1, 2001 regarding the objections expressed by your client.... We have taken very seriously the comments of the residents of Broad Street and other Stakeholders that were made in two tenant meetings held in Columbus as well as the correspondence sent to this office.

The letter went on to state that OMHAR was confident that appropriate measures had been taken to address NRI's concerns and management issues. In addition, the letter indicated that no formal appeals procedures or objection mechanism existed for parties such as NRI who do not own section 8 housing subject to the restructuring decisions made by HUD.

The Plaintiffs claim, "on information and belief," that Campus Partners and/or the entities controlled or directed by it or affiliated with it, and Broad Street and/or the entities controlled or directed by it or affiliated with it, intend to begin the section 8 housing restructuring process some time in the near future. The Plaintiffs state that NRI "and its membership have significant concerns that the result of the restructuring will be the continued overconcentration of low-in-

---

**5.** On each page of the document, the following language is printed: "Confidential and preliminary draft, not for circulation. Document intended for illustration of important policy issues and directions. Factual omissions and inconsistencies will be corrected prior to submission."

come housing in the near east neighborhood and the neglect in the near east neighborhoods in favor of the university district restructuring currently being undertaken by Defendant Campus Partners." The Plaintiffs contend that the restructuring will result in a concentration of low-income housing in Olde Town East above a thirty percent ratio in violation of the public policy of the City of Columbus.

Based on the foregoing, the Plaintiffs filed a Complaint with this Court on May 10, 2002. Through the Complaint, the Plaintiffs seek declaratory relief, including a declaration from the Court that HUD may not continue to process the Defendants' request for approval of a Transfer of Physical Assets ("TPA")[6] and an accompanying restructuring of the mortgage debts on the multifamily housing projects that they own pursuant to MAHRA until HUD has provided the Plaintiffs with certain information and an opportunity to comment on the proposed restructuring. The Plaintiffs assert that, by failing to allow the Plaintiffs to participate in the restructuring process, the Defendants have violated their constitutional rights to equal protection and due process.

This matter is now before the Court on the Defendants' Motions to Dismiss the Plaintiffs' Complaint, filed pursuant to Fed. R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). The Court will examine each of the three Motions to Dismiss in turn.

### III. STANDARDS OF REVIEW

#### A. Rule 12(b)(1)

Before determining whether a plaintiff has failed to state a claim upon which relief may be granted, the Court must first decide whether it has subject matter jurisdiction. *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D.Ohio 1993) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990)). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). The plaintiff has the burden of

proving jurisdiction when subject matter jurisdiction is challenged under 12(b)(1). *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.

#### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), the defendant may file a motion to dismiss the plaintiff's complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Under limited circumstances, however, a court may rely on documents outside the pleadings, if those documents "simply [fill] in the contours and details of the plaintiff's complaint, and [add] nothing new," without converting the motion to dismiss into a motion for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard*, 76 F.3d at 724 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994)). While the complaint need

---

**6.** The term "Transfer of Physical Assets" is used by HUD to describe the sale of a multifamily

housing project with a subsidized mortgage to a new owner, which must be approved by HUD.

not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette*, 41 F.3d at 1064. While liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

## IV. ANALYSIS

### A. Secretary of HUD's Motion to Dismiss

The Plaintiffs allege that the Secretary of HUD has violated § 514 of MAHRA, which requires the Secretary to establish procedures to allow tenants and neighborhood residents to participate effectively and on a timely basis in a section 8 restructuring. Defendant Secretary of HUD has filed a Motion to Dismiss, arguing that the Plaintiffs' claims against him should be dismissed on multiple grounds. The Court need not address all of the arguments set forth by the Secretary, however, as the Court finds that the Plaintiffs' claims must be dismissed because no private right of action exists under MAHRA.

The Court recognizes that the Supreme Court has found that a private right of action may exist under certain provisions of the Housing Act. *See Wright v. City of Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 424–30, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (recognizing that tenants of low-income housing covered by the Housing Act have a private right of action under 42 U.S.C. § 1437a regarding the tenants' rent and utility allowances). Since the Supreme Court's ruling in *Wright*, however, a number of federal courts have concluded that no private right of action exists under section 8 of the United States Housing Act, the provision invoked by the Plaintiffs. *See Banks v. Dallas Housing Auth.*, 271 F.3d 605, 610–11 (5th Cir.2001) (holding that no private right of action exists for tenants of the project); *Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir.1993) (recognizing that 42 U.S.C. § 1437f does not create a private right of action); *Smith v. Washington Heights Apartments, Ltd.*, 794 F.Supp. 1141 (S.D.Fla.1992) (dismissing one count of the plaintiffs' complaint on the ground that no implied right of action exists under the Housing Act, 42 U.S.C. § 1437).

██ No language in section 8 of the Housing Act explicitly provides for a private cause of action. Hence, the Court must determine if the statute creates an implied right of action. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court articulated a four-part test for determining whether an implied right of action exists in a federal statute. The Court is to consider: (1) whether the plaintiffs are among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy. *Id.* at 78, 95 S.Ct. 2080 (citations omitted). Subsequently, however, the Supreme Court refined this inquiry and held that the determinative factor is simply whether Congress intended to create a private cause of action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *see Thompson v. Thompson*, 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the *Cort v. Ash* analysis in *Touche Ross* ... and *Transamerica* ..., converting one of its four factors (congressional intent) into *the determinative factor*, with the other three merely indicative of its presence or absence.") (emphasis in original). The Court is to consider the other *Cort* factors only to the extent that they aid in the determination of congressional intent. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 308 (6th Cir.2000) (citation omitted).

Applying this test, the Court finds that Congress did not intend for MAHRA to provide the Plaintiffs with a private right of action. Congress intended for MAHRA to benefit HUD by allowing HUD to restructure mortgages as a means of preserving its budget while preventing default on loans. The Congressional findings set forth in the statute indicate that MAHRA was promulgated to alleviate HUD's difficult position of renewing section 8 contracts with above-market rental value, thereby losing HUD dollars, or lowering the rents of section 8 properties, thereby causing default on federally insured mortgages. MAHRA § 511(a). In attempting to achieve these goals, Congress had no intent to create a private right of action for persons opposed to new housing developments. In particular, neither MAHRA nor 24 C.F.R. § 401.500 was intended to benefit people such as the plaintiffs who have "concerns" about a concentration of low-income housing, or to allow such parties to bring a cause of action to oppose a restructuring. Rather, the purposes of MAHRA, as set forth in MAHRA § 511(b), indicate that the statute was intended to preserve the viability of federally funded housing projects and to protect the interests of project owners, managers, and tenants. *See* discussion *supra* Part II.A. (enumerating the purposes of MAHRA). As the Fifth Circuit stated, the Court simply finds "no evidence in the text or structure of the statute that would evidence any intent on the part of Congress to create either a substantive federal right or a private right-of-action to enforce that right." *Banks,* 271 F.3d at 611.

■ The Court notes, moreover, that MAHRA was drafted as a directive to HUD, and, as such, focuses on HUD. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particu-

lar class of persons.'" *Alexander v. Sandoval,* 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). As a general rule, statutes that act as directives to federal agencies engaged in the distribution of federal funds are not intended to create private rights of action. *Id.* (recognizing that, when statutes act as directives to federal agencies, there is little reason to infer a private remedy in favor of individuals) (citations omitted).

Therefore, the Court finds that MAHRA does not create a private cause of action, and **GRANTS** the Defendant Secretary of HUD's Motion to Dismiss on that basis.

### B. Broad Street Defendants' Motion to Dismiss

Like the Secretary of HUD, the Broad Street Defendants contend that the Plaintiffs' claims must be dismissed because no private right of action exists under MAHRA § 514 or 24 C.F.R. § 401.500.[7] In addition to their argument that the Plaintiffs' claims bear no relation to MAHRA's purpose of aiding HUD, the Broad Street Defendants contend that the Plaintiffs cannot assert a private cause of action against them pursuant to MAHRA and C.F.R. § 401.500 because those provisions impose no obligations on these private parties.

The Court agrees that the provisions relied on by the Plaintiffs impose no obligation on the Broad Street Defendants that could have resulted in the Plaintiffs' alleged harm. In particular, the statutory provision, MAHRA § 514(f), imposes only an obligation on the Secretary of HUD to establish procedures for particular parties to participate in the restructuring process. Similarly, the regulatory provision, 24 C.F.R. § 401.500, imposes obligations only on the PAE to facilitate that

---

7. MAHRA § 514(f) states, in pertinent part:

The Secretary shall establish procedures to provide an opportunity for tenants of the project, residents of the neighborhood, the local government, and other affected parties to participate effectively and on a timely basis in the restructuring process established by this subtitle.

Pursuant to that provision, HUD promulgated 24 C.F.R. § 401.500, which requires the participat-

ing administrative entity ("PAE") to solicit comments on a restructuring plan from local community residents. 24 C.F.R. § 401.500(a). The PAE must give the tenant and local community residents notice of its intent to restructure. That notice must state, *inter alia,* how comments may be provided to the PAE regarding any proposed sale or transfer of the property or any other matters regarding the property and its management. 24 C.F.R. § 401.500(b)(2).

participation. Neither provision mandates that private entities who own or manage section 8 housing, such as the Broad Street Defendants, take any particular action with respect to others' participation in the restructuring process. Had Congress intended to impose an affirmative obligation on those parties, it clearly could have done so, as it did with respect to the Secretary of HUD. The lack of an explicit statement to that effect in the statute indicates that Congress did not intend to impose an affirmative obligation on private entities such as the Broad Street Defendants with respect to other parties' participation in the restructuring process.

Accordingly, and for the reasons set forth above with respect to the Secretary of HUD's Motion to Dismiss, the Court finds that the Plaintiffs cannot assert a private cause of action against the Broad Street Defendants under MAHRA, and GRANTS the Broad Street Defendants' Motion to Dismiss.

### C. Delaware Defendants' Motion to Dismiss

■ The Delaware Defendants filed a Motion to Dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted. In their Motion, the Delaware Defendants assert that they must be dismissed as defendants because the Plaintiffs' Complaint does not allege that they have undertaken any activity, or have failed to undertake any activity, that caused or will cause harm to the Plaintiffs.

The Delaware Defendants have been named as Defendants to this action based on the following statement in the Plaintiffs' Complaint:

> The Defendant Government entities, the City of Columbus, and the counties in which it is located, Franklin County, Delaware and Fairfield County ... are believed to have an interest in the outcome of the development of properties in the near east side of Columbus and the dispersion of low income housing throughout the City of Columbus and County of Franklin, the County of Delaware and the County of Fairfield.

The Plaintiffs assert, in accordance with this statement, that the Delaware Defendants must be named as parties to their action under Fed.R.Civ.P. 19(a).

Fed.R.Civ.P. 19(a) states, in pertinent part:

> A person ... shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

The Plaintiffs assert that Rule 19(a) requires the Delaware Defendants to be joined because they believe that the Delaware Defendants have an interest in the restructuring plan submitted by Campus Partners and the Broad Street Defendants. The Plaintiffs presume that the Delaware Defendants have an interest in the restructuring plan because part of the City of Columbus lies within Delaware County, and the entire City of Columbus is affected by the dispersion of section 8 housing under the proposed plan. The Plaintiffs contend that if the Delaware Defendants are not a part of this action, their absence may impair or impede their ability to protect their interest in the proposed restructuring plan. In addition, the Plaintiffs assert that the Delaware Defendants are necessary parties because the Plaintiffs have sought declaratory and other equitable relief "as against any and all the Defendants as the Court shall deem necessary, proper, and appropriate . to carry out and enforce this Court's [declaratory judgment]."

The Federal Rules of Civil Procedure require a claim to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Plaintiffs have provided the Court with absolutely no factual basis for their "belief" that the Delaware Defendants have an interest in the development of properties in the near east side of Columbus and the dispersion of low-income housing throughout the City of Columbus. As such, the Complaint fails to comply with the liberal

pleading requirements of Fed.R.Civ.P. 8(a)(2).

Furthermore, as the Plaintiffs have failed to plead any facts indicating that the Delaware Defendants have an interest in this litigation, the Plaintiffs' argument that the Delaware Defendants are necessary parties under Rule 19(a) must fail. In the absence of specific facts supporting the Plaintiffs' "belief" that the Delaware Defendants have an interest in the outcome of this litigation, nothing in the pleadings indicates that any interest of the Delaware Defendants will, in fact, be impeded or impaired if these Defendants are absent from the litigation.

Finally, the Court rejects the Plaintiffs' claim that the Delaware Defendants are necessary parties because the Plaintiffs have sought declaratory judgment against them. The declaratory relief sought is vague, and in no way clarifies the manner in which the Delaware Defendants are alleged to have an interest in the outcome of this litigation. The fact that the Plaintiffs have requested relief against the Delaware Defendants without providing factual support as to why that relief should be granted does not, in and of itself, provide the factual basis for including the Delaware Defendants as parties.

Therefore, the Court **GRANTS** the Delaware Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendants' Motions to Dismiss.

**IT IS SO ORDERED.**